**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Dametrice Pooler, | ) | **C/A No: 2:19-CV-03347-DCN** |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Alan Wilson, as Attorney General, State of | ) | **PLAINTIFF'S RESPONSE IN** |
| South Carolina and South Carolina Law | ) | **OPPOSITION TO DEFENDANTS'** |
| Enforcement Division (SLED), and John Does | ) | **AMENDED MOTION TO DISMISS** |
| 1-10, | ) | |
| | ) | |
| In Re: Forfeiture | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**TO:    THIS HONORABLE COURT AND ALL COUNSEL OF RECORD**

Dametrice Pooler ("Plaintiff"), by and through Plaintiff's undersigned counsel, hereby

responds in opposition to Defendants, Alan Wilson, as Attorney General, State of South Carolina

and South Carolina Law Enforcement Division's (SLED) (collectively "Defendants"), Motion to

Dismiss, or in the Alternative, Motion for Summary Judgment [Defs.' Motion to Dismiss., Dec.

16, 2019, ECF No. 13].  For the reasons set forth herein, <u>Defendants' motion should be denied</u>.

## PROCEDURAL BACKGROUND AND FACTUAL SUMMARY

Plaintiff filed the present case to recover seized and subsequently forfeited U.S. Currency

in the Berkeley County Court of Common Pleas on September 27, 2019, arising from the

December 13, 2017, seizure of $104,596.00 in U.S. Currency from Plaintiff's home [Pl.'s 2d Am.

Compl., Dec. 11, 2019, ECF No. 10 at ¶¶ 10-11].  At the time of the seizure, Plaintiff advised

Defendants that the seized currency was, in fact, Plaintiff's, and that Plaintiff had an interest in the

seized currency [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶ 11].  Plaintiff was never

arrested nor charged with a crime [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶ 12].

Nevertheless, Defendants seized and retained Plaintiff's lawfully begotten currency, and still,

years later, have failed to bring timely and appropriate forfeiture proceedings against Plaintiff

[Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶¶ 13-15].  Instead, Defendant Alan Wilson,

as Attorney General, State of South Carolina, instituted a forfeiture action against the $104,596.00

in seized U.S. Currency in the Berkeley County Court of Common Pleas, Case No. 2018-CP-08-

02453 (hereinafter the "Berkeley County matter"), and provided notice only to Dewayne Walker—

proceedings for which Plaintiff was never served or otherwise given due and requisite notice, thus

depriving Plaintiff of Plaintiff's due process rights where Defendants had notice of Plaintiff's

claim of lawful and innocent ownership in the seized currency at issue.

It is critical to note that, at the time of the seizure, Mr. Walker was not residing in Plaintiff's

home where the search/seizure occurred, and that Plaintiff informed law enforcement at the time

the search/seizure was executed that Mr. Walker and Plaintiff had not been together for months,

that the currency seized was not the property of Mr. Walker, and Plaintiff concurrently notified

Defendants that the currency being seized from Plaintiff's home was, indeed, Plaintiff's lawfully

begotten property.  Still, Defendants claim here that the seized currency was "found during the

arrest of Mr. Dewayne Walker and the money was *presumed* to be his…" [Defs.' Memo. in Supp.

of Motion to Dismiss, Dec. 4, 2019, ECF No. 8 at p. 2 (emphasis added)].

Plaintiff's Amended Complaint was filed on October 24, 2019.  Defendants removed the

action to this Honorable Court on November 27, 2019 [Defs.' Notice of Removal, Nov. 27, 2019,

ECF No. 1].  Thereafter, Defendants filed Defendants' Motion to Dismiss on December 4, 2019

[Defs.' Motion to Dismiss, Dec. 4, 2019, ECF Nos. 7 and 8].  Plaintiff responded in opposition to

Defendants' motion and submitted Plaintiff's Second Amended Complaint on December 11, 2019

[Pl.'s Memo. in Opp., Dec. 11, 2019, ECF No. 9; Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10]. On December 18, 2019, Defendants submitted Defendants' reply to Plaintiff's memorandum [Defs.' Reply, Dec. 18, 2019, ECF No. 12], and on December 26, 2019, submitted Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Defs.' Am. Motion to Dismiss, Dec. 26, 2019, ECF No. 13].

## STANDARD OF REVIEW

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("[a] motion to dismiss under Rule 12(b)(6) [] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

In this instant case, Plaintiff has pled that Plaintiff is the lawful owner of $104,596.00 in U.S. Currency which was seized from Plaintiff's home, that Plaintiff is an innocent owner of that currency, and that no proceedings were brought before Plaintiff for Plaintiff's claim to the seized currency at issue in violation of Plaintiff's due process rights [P.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶¶ 10-15]. In viewing the pleadings in the light most favorable to Plaintiff, Plaintiff has, indeed, pled sufficient factual allegations and stated a claim for which Defendants are liable in this case, and Defendants' motion to dismiss should be denied.

I. **Plaintiff is an Innocent Owner of the Currency Seized and Retained by Defendants and Plaintiff has Properly Asserted Plaintiff's Rights and Interest in the Seized Currency in the Present Case. Defendants Effectively Denied Plaintiff Notice and Opportunity to be Heard as to the Seizure and Retention of Plaintiff's Seized Currency in Violation of Plaintiff's Due Process Rights. Thus, Defendants' Motion Should be Denied.**

The United States Supreme Court vehemently states that "[o]ur precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *U.S. v. Good*, 510 U.S. 43, 48 (1993). In the case of an innocent owner of seized property, South Carolina law allows the court to return an innocent owner's seized property if the owner is able to demonstrate by a "preponderance of the evidence" that she did not have knowledge of illegal activity, was not a party to the illegal activity, or was no in privity as to the use of the property subject to forfeiture. S.C. Code Ann. § 44-53-586.

Under Section 44-53-530(a) of the South Carolina Code, the seizing agency is required to file a forfeiture action within a reasonable time of the seizure. The statute does not define a reasonable time. As it stands now, the law permits a seizure without a warrant if the seizure is

made as incident to arrest or if probable cause exists to believe that the property was used in violation of the State's drug laws. *See* S.C. Code § 44-53-520(b)(1) and (4). The statute does not have a provision for any type of pre-seizure or post-seizure hearing to determine if probable cause exists. For a seizure under subsections (b)(1) and (4), the law does not provide for any judicial review or judicial authorization prior or subsequent to the seizure.

Section 44-53-530 of the South Carolina Code provides as follows, in pertinent part:

> (a) Forfeiture of property defined in Section 44-53-520 must be accomplished by petition of the Attorney General or his designee or the circuit solicitor or his designee to the court of common pleas for the jurisdiction where the items were seized. **The petition must be submitted to the court within a reasonable time period following seizure and shall set forth the facts upon which the seizure was made. The petition shall describe the property and include the names of all owners of record and lienholders of record. The petition shall identify any other persons known to the petitioner to have interests in the property.** Petitions for the forfeiture of conveyances shall also include: the make, model, and year of the conveyance, the person in whose name the conveyance is registered, and the person who holds the title to the conveyance. The petition shall set forth the type and quantity of the controlled substance involved. A copy of the petition must be sent to each law enforcement agency which has notified the petitioner of its involvement in effecting the seizure. **Notice of hearing or rule to show cause must be directed to all persons with interests in the property** listed in the petition, including law enforcement agencies which have notified the petitioner of their involvement in effecting the seizure. Owners of record and lienholders of record may be served by certified mail, to the last known address as appears in the records of the governmental agency which records the title or lien.

S.C. Code § 44-53-530(a) (emphasis added).

Defendants argue, in part, that Plaintiff's claim is foreclosed based upon common law from 1897. However, the outdated and antiquated case cited by Defendants, *Ex parte Kenmore Shoe Co.*, 50 S.C. 40, 154 27 E.S 682, 686 (1897) pre-dates this State's civil forfeiture statutes and does not include the statutory language required by same, namely that innocent owners **shall** be

identified and given notice of hearings.  Moreover, and as explained by the South Carolina Court

of Appeals in 1995, Section 44-53-586 is a remedial statute that has been enacted to provide a

remedy to innocent owners like Plaintiff.[1]  *Ducworth v. Neely*, 319 S.C. 158, 163 n.3, 459 S.E.2d

896, 899 (Ct. App. 1995).  As Plaintiff has sufficiently pled, Defendants were made aware at the

time of the seizure of Plaintiff's currency that Plaintiff claimed an interest in same, and Plaintiff

was never served with, nor notified of, a forfeiture proceeding regarding Plaintiff's seized

currency, consequently violating Plaintiff's due process rights.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both

civil and criminal cases."  *Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145, 1184 (D. N.M.,

2018) (finding that New Mexico forfeiture program violates due process by placing the burden of

proof on innocent property owners).  "This requirement of neutrality in adjudicative proceedings

safeguards the two central concerns of procedural due process, the prevention of unjustified or

mistaken deprivations and the promotion of participation and dialogue by affected individuals in

---

[1] Notably, and instructive in this case, the common law recognizes the importance of "knowledge" of illegal activity when it comes to innocent owners.  In *Ducworth*, store owners had their store forfeited resulting from a drug raid. *Ducworth v. Neely*, 319 S.C. 158, 163 n.3, 459 S.E.2d 896, 896 (Ct. App. 1995). The South Carolina Appellate Court reversed the trial court's forfeiture decision based on the fact that the trial court must analyze the store owners' "actual knowledge" of criminal activity on their property. *Id*.  Even though law enforcement was able to show drugs were sold on the property and were allowed to seize that property, the store owners still had a probable claim to have their property returned. *Id*.  Knowledge of illegal activity, meaning "actual knowledge," must be assessed by applying the reasonable person standard to decide if owners had actual knowledge of drug activity on their premises. *Id*.  Our State's Supreme Court holds that an owner of seized money is subject to a jury trial when property subject to state forfeiture is normally used for lawful purposes.  *Medlock v. 1985 Ford F-150 Pick Up*, 308 S.C. 68, 68, 417 S.E.2d 85, 87 (1992). In *Ducworth*, had the action been commenced by the Neelys pursuant to Section 44-53-586, a different classification of the action would have been mandated.  Section 44-53-586 was unknown at common law and prior to 1984.  Because the provision affords the innocent owner a remedy not recognized previously, it should be classified as remedial. *Ducworth*, 319 S.C at 163 n.3, 459 S.E.2d at 899.  Remedial statutes are to be construed liberally in order to effectuate their purpose. *South Carolina Dep't of Mental Health v. Hanna*, 270 S.C. 210, 241 S.E.2d 563 (1978); *Inabinet v. Royal Exch. Assur. Of London*, 165 S.C. 33, 162 S.E. 599 (1932).

the decision-making process." *Id.* To be sure, due process does "not permit any procedure which would offer a possible temptation to the average man as judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance of nice, clear and true between the state and the accused." *Id.*

Critically, because South Carolina's forfeiture statutes, S.C. Code Sections 44-53-520 and 44-53-530, do not require meaningful proof of any wrongful act by the defendant, they unconstitutionally shift the burden to the defendant who, in some cases, is not even charged with a crime. *See Martin v. Ohio*, 480 U.S. 228, 233-34 (1987), *Nelson v.* Colorado, 137 S. Ct. 1249 (2017 (invalidating a Colorado statute that required a defendant to "prove her innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to an invalid conviction."). Unfortunately, Plaintiff is only one of thousands of innocent owners who have been effectively stripped of their due process rights and their property rights as a result of law enforcement's failure to follow statutory notice requirements in forfeiture proceedings, or otherwise due to this State's unconstitutional forfeiture statues.

Currently, this State's asset forfeiture laws are being challenged on the grounds that forfeitures violate multiple aspects of the Constitution, namely the prohibition on excessive fines, violation of due process in that forfeitures place the burden on the property owner to prove her innocence, violation of due process by institutionally incentivizing forfeiture officials to prosecute forfeitures, and violation of due process in that forfeitures do not mandate judicial review or judicial authorization prior to or subsequent to the seizure of assets. [*See* <u>Exhibit A</u>, Aug. 28, 2019, Order of The Honorable Steven H. John, Chief Admin. Judge for the 15th Judicial Cir. in

*Richardson v. Green*, Case No. 2017-CP-26-07411].[2]    Judge John held that South Carolina's forfeitures statutes violate the prohibition on excessive fines found in the Eighth Amendment to the United States Constitution and Article I, Section 15 of the South Carolina Constitution [*See* Exhibit A at p. 3].    Judge John's opinion goes on to state that "South Carolina's forfeiture statutes violate both the federal and South Carolina constitutional protections against excessive fines by permitting the government to seize unlimited amounts of cash and other property without regard to the proportionality of the crime that may have been committed…" [*See* Exhibit A at p. 4].    In particular, the opinion underlines the ultimate issue that the State's forfeiture statutes "allow the government to seize unlimited amounts of cash and other property *when no crime has been committed*, without a criminal conviction, and without proof of a crime having been committed beyond a determination of probable cause." [*See* Exhibit A at pp. 4-5 (emphasis supplied)].

The *Nelson* Court applies the balancing test by evaluating (1) the private interest affected; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the governmental interest at stake.    *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).    Here, as in *Nelson*, Plaintiff has an obvious interest in regaining the currency that was taken from Plaintiff by Defendants.    Like the forfeiture statute at issue in *Nelson*, this State's forfeiture scheme creates, and in fact has created and continues to create, an unacceptable risk of the erroneous deprivation of Plaintiff's property in that the forfeitures statues do not require any meaningful proof of an accused's guilt before the seizure of the accused's property.    Moreover, Defendants (and, in turn, the State) have zero legitimate interest in seizing and continuing to withhold Plaintiff's property

---

[2] In *Green*, agents of the 15th Circuit Drug Enforcement Unit made three controlled buys of cocaine from Defendant Green.    Agents then executed a search warrant on Defendant Green's home, ultimately seizing $19,800.00 from the home.

when Plaintiff has neither been convicted or even charged with a crime whatsoever, and has not been afforded notice and opportunity to be heard.

While South Carolina law does permit a property owner to file a civil action to obtain the return of her property, as Plaintiff has done here, this Honorable Court should not turn a blind eye to the fact that Defendants seized and are keeping Plaintiff's property for Defendants' benefit without any legitimate judicial determination of the right of Defendants to keep Plaintiff's property. Certainly, due process cannot mean that Defendants have the right to decide when Defendants wish to afford Plaintiff a hearing to determine whether Defendants have the right to seize and dispose of Plaintiff's property. Plaintiff, and, in fact, no citizen in this State should have her property seized without a hearing and be at the mercy of the agency seizing the property to determine when Plaintiff will have a hearing.

Our State's Supreme Court found in 2006 that currency forfeited had not met the burden of being fairly traceable to illegal drug transactions. *Pope v. Gordon*, 369 S.C. 469, 633 S.E.2d 148 (2006). In *Pope*, the State presented several witnesses to testify about the respondent's finances. *Id.* Ultimately, the *Pope* Court rejected the "totality of the circumstances" approach from *U.S. v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990), finding the "probable cause of seizure actions approach" would lessen the burden on the State and is in direct contravention to the word "traceable" in the language of the statute. *Pope*, 369 S.C. 469 at 475, 633 S.E.2d at 151.

In another similar case in South Carolina, a mother brought a claim for currency seized due to her son's illegal drug activity. *Gowdy v. Gibson*, 391 S.C. 374, 706 S.E.2d 495 (2011). The *Gowdy* Court made a "practical, common-sense decision whether, given all the circumstances set forth…there is a fair probability that the properties to be forfeited are proceeds of drug transactions." *Id.*, 391 S.C. at 381-82, 706 S.E.2d at 499. In *Gowdy,* the mother was able to bring

her claim with just as much factual information as Plaintiff brings here. In *Gowdy*, it is reasoned that "[t]he court…may not do, and what the State urged the Court to do, is draw inferences based on evidence that is unrelated to the property being seized." *Id.*  It should also be noted that South Carolina has not specifically addressed what constitutes "close proximity" when assessing how close money and illegal contraband need to be in order to claim they are related. *Id.* Other states have defined close proximity not by terms of measurement, but on a case by case basis. *Id.*

Unfortunately, Plaintiff is one of thousands across this State suffering a similar battle as an innocent owner of seized property, which inures to the benefit of the seizing agencies.  While admittedly not binding on this Honorable Court, the inequity and unconstitutionality of this State's forfeiture law, in line with the well-reasoned opinion by Judge John in *Green*, should be considered.  Illustrative is *The Greenville News* in-depth series of investigative articles entitled "TAKEN," which lays bare this State's civil forfeiture system and shows that law enforcement seized more than $17 million from South Carolina citizens in three years, with much of that money going directly to police.[3]  In examining 3,200 cases involving more than 4,000 citizens filed across the State from 2014 to 2016, "TAKEN" revealed as follows:

- Nearly 800 times when police seized money or property, no related criminal charge was filed.

- Nearly one-fifth of citizens who had their assets seized were not charged with a related crime.  Out of more than 4,000 citizens hit with civil forfeiture over three years, 19 per cent were never arrested.

---

[3]https://www.greenvilleonline.com/in-depth/news/taken/2019/01/29/civil-forfeiture-south-carolina-errors-delays-property-seizures-exclusive-investigation/2460107002/?utm_source=oembed&utm_medium=onsite&utm_campaign=storylines&utm_content=news&utm_term=4238562002 (last accessed Feb. 5, 2020).

- Fifteen states have made forfeiture dependent on a criminal conviction, while South Carolina has not.

- When a citizen petitions to have her money returned it often takes an average of 17 months from the time of the seizure to be resolved.

- Prosecutors have up to two years after police seize money to file a civil court case justifying the seizure.  On average, when a citizen petitions to have money or property returned, the case takes 17 months from the time of the seizure to be resolved, regardless of the outcome of any related criminal charges.

- The bulk of forfeited money finances law enforcement, but there is little oversight of what is seized and how the forfeited money is spent.  The forfeiture system is designed to be applied at scale.  The more forfeiture is used, the more money law enforcement has at its disposal for equipment, training, and undercover drug purchases.

- At least 29 states have taken steps to reform their forfeiture process, with 15 states now requiring a criminal conviction before property can be forfeited (according to the Institute for Justice, a non-profit libertarian law firm).

"TAKEN" effectively illustrates the life-changing power that our State law holds over citizens—the ability of law enforcement to seize property from citizens, even if those citizens are not charged with a crime.  The statewide journalism project yielded a clear picture of what was, and still is, happening:  law enforcement is systematically seizing currency and property, many times from citizens who are not guilty of a crime, ultimately netting law enforcement millions of dollars each year.  According to "TAKEN," between 2014-2016, law enforcement agencies seized more than $17 million, with the seizures leaving thousands of citizens without their cash and belongings or reliable means to get them back.

Here, Plaintiff has not been given any opportunity, as is Plaintiff's right, to demonstrate that: (1) Plaintiff is an innocent owner of the seized currency at issue; (2) Plaintiff was not involved as a consenting party to the alleged illegal activity through which Plaintiff's currency was seized; or that (3) Plaintiff has a lack of knowledge to the use of the property seized and forfeited under S.C. Code Section 44-53-586.  Certainly, Plaintiff has had no fundamental opportunity to display evidence of Plaintiff's "actual knowledge" in violation of Plaintiff's due process rights, and Defendants' present motion seeks to further deny Plaintiff elementary and fundamental rights guaranteed under the Constitution.  Plaintiff was provided no notice to present evidence of Plaintiff's lawful and innocent ownership of Plaintiff's seized currency in violation of Plaintiff's due process rights despite Defendants having notice of Plaintiff's claim to ownership of the seized currency.  Further, Plaintiff has not been charged or convicted of any criminal activity in connection with the seized currency at issue.

To be clear, it is emphasized that U.S. Currency, as in this case, is not an illegal substance, but rather Plaintiff's legal property.  Again, as was the case in *Pope* where the court determined the State failed to prove the seized currency was from illegal drug transactions, Plaintiff has yet to have the opportunity to present witnesses, business records, or financial documentation to demonstrate Plaintiff's lawful and innocent ownership of Plaintiff's seized currency. Plaintiff should be allowed to demonstrate that the $104,596.00 seized from Plaintiff's home was lawfully acquired by Plaintiff and unlawfully forfeited as a result of Defendants' unlawful and unconstitutional retention of Plaintiff's seized currency.

Likewise, the pivotal difference between Plaintiff's case and *Gowdy* is that, at the time of the seizure in *Gowdy*, the mother said she did not have access to the safe where the seized money was found and did not make any claim to law enforcement that the seized currency was hers. In

*Gowdy,* the mother was able to bring her claim with just as much factual information as Plaintiff brings here. Plaintiff has sufficiently alleged innocent ownership of Plaintiff's seized currency, and, what is more, Plaintiff provided Defendants actual notice that Plaintiff was an innocent owner at the time Plaintiff's currency was seized from Plaintiff's home.

Defendants assert that "Plaintiff fails to plead any facts showing the money was innocently owned by her…" and that Plaintiff's "innocent ownership claim against the forfeiture must be dismissed for failure to state a claim." [Defs.' Memo. in Supp. of Motion to Dismiss, Dec. 4, 2019, ECF No. 8 at p. 4]. This is false, as Plaintiff pleads with specificity the factual allegation necessary to withstand Defendants' motion: "…Plaintiff Dametrice Pooler is the *lawful owner* of or about One Hundred Four Thousand Five Hundred Ninety-Six Dollars (104,596.00) in U.S. Currency." [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶ 10 (emphasis added)]. Indeed, Plaintiff notified Defendants of same at the time of the search/seizure at Plaintiff's home, and has properly, timely, and sufficiently pled same. Moreover, due to Defendants' lack of notice to Plaintiff regarding the Berkeley County matter (a duty shirked by Defendants), and Plaintiff's claim for return of Plaintiff's seized currency (as is Plaintiff's right under the law), Defendants' assertion necessarily fails.

Plaintiff should not be stripped of Plaintiff's fundamental and constitutional right to demonstrate innocent and lawful ownership of the $104,596.00 seized and retained by Defendants. This Honorable Court should make a "practical, common-sense decision" that there is a fair probability that the currency at issue is not the product or proceeds of illegal drug transactions. Without due process, there cannot be, and should not be, a legitimate or lawful reason that would entitle Defendants to the relief requested in Defendants' motion. Therefore, Defendants' motion should be denied.

**II.     Defendant Wilson, as Attorney General, is a Proper Party to this Case.   Thus, Defendants' Motion Should be Denied.**

In Plaintiff's Second Amended Complaint, Plaintiff sets forth that Defendant Wilson, in his capacity as Attorney General, oversees forfeiture proceedings for SLED [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF. No. 10 at ¶ 2].   Nonetheless, Defendant Wilson claims immunity from suit. Section 44-53-586 of the South Carolina Code provides, in pertinent part:

> (a) Any innocent owner or any manager or owner of a licensed rental agency or any common carrier or carrier of goods for hire may apply to the court of common pleas for the return of any item seized under the provisions of Section 44-53-520. **Notice of hearing** or rule to show cause accompanied by copy of the application **must be directed to all persons and agencies entitled to notice under Section 44-53-530.** If the judge denies the application, the hearing may proceed as a forfeiture hearing held pursuant to Section 44-53-530.

S.C. Code Section 44-53-586(a) (emphasis added).

Perplexing is that Defendant Wilson claims immunity in this case despite having brought, in Defendant Wilson's name/capacity only, the very civil asset forfeiture proceeding against the currency at issue in the Berkeley County matter—the same forfeiture proceeding that Defendants now allege is dispositive as to the disposition of Plaintiff's seized currency [*See* Exhibit B, Aug. 15, 2019, Order, *Alan Wilson, as Attorney General, State of South Carolina v. One Hundred Four Thousand Five Under Ninety-Six Dollars ($104,506.00) in U.S. Currency*, Case No. 2018-CP-08-02453].   Conveniently, the party that purports immunity in this case (Defendant Wilson) is the same party that has effectively denied Plaintiff due process rights by unconstitutionally retaining Plaintiff's seized currency.   Again, the same seized currency which Plaintiff notified Defendants of Plaintiff's interest therein, and the same proceeding for which Defendants summarily failed to provide Plaintiff notice so as to allow Plaintiff to protect Plaintiff's rights.

Defendants' classic and unfortunate "have my cake and eat it, too" argument is specious at best. Based on Section 44-53-586 of the South Carolina Code, and Defendant Wilson's own forfeiture proceeding in the Berkeley County matter, Defendant Wilson is a proper party to the present case.

Furthermore, Plaintiff's first cause of action is based on State statutory law that applies to "innocent owners" and allows innocent owners to bring a claim for the return of property where the owner of that property asserts that she is, in fact, an innocent owner. In denying Defendant Wilson is a proper party, Defendants attempt to shift the burden to Plaintiff for Plaintiff's purported failure to make an appearance in the Berkeley County matter, all the while attempting to foreclose Plaintiff from opportunity to prove Plaintiff's innocent ownership in the present case. Critically, it is Plaintiff who brought the present case to assert Plaintiff's rights due to Defendants' outright and blatant failure to place Plaintiff on notice that Defendants were attempting to dispose of Plaintiff's property via a totally separate action for which Defendants shirked Defendants' duty—that is, to place Plaintiff on notice sufficient to protect Plaintiff's due process rights. As an innocent owner who provided notice to Defendants as to Plaintiff's interest in the seized currency at issue, Section 44-53-586 is clear that Defendants had the duty to notify Plaintiff of the forfeiture hearings in the Berkeley County matter; however, as described herein, Defendants never did, and never had any intention of doing so. It is no secret that forfeitures ultimately serve to stock Defendants' coiffeurs with forfeited currency in order for Defendants to achieve Defendants' underlying goal—to use the civil justice system as a means to finance Defendants' own interests by depriving innocent owners of their property.

Certainly, Plaintiff was **<u>never</u>** afforded the opportunity to participate in the Berkeley County matter—a proceeding for which Plaintiff was never served nor otherwise afforded the

opportunity to present evidence, cross-examine witnesses, or otherwise present evidence that Plaintiff is the lawful and innocent owner of the seized currency from Plaintiff's home.

Here, in Plaintiff's Second Amended Complaint, Plaintiff sufficiently alleges that Defendant Wilson, in his capacity as Attorney General, oversees forfeiture proceedings for SLED [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF. No. 10 at ¶ 2].  Nonetheless, Defendant Wilson claims immunity from suit.  Still, Plaintiff has sufficiently pled that Plaintiff was the lawful owner of the U.S. Currency seized and retained by Defendants, and Plaintiff was never arrested or charged with a crime.  Defendants seek to dismiss Plaintiff's Second Amended Complaint because Plaintiff has not, in Defendants' misguided view, pled facts showing how the seized currency was innocently owned by Plaintiff.  Indeed, Plaintiff has brought a proper action against Defendant Wilson for the recovery of the currency at issue, pled the requisite innocent ownership of same, and Defendants' motion should absolutely be denied.

## III.   Plaintiff has Established a *Prima Facie* Case for Conversion of the Seized Currency at Issue, and Defendants' Motion Should be Denied.

Conversion is the unauthorized assumption and exercise of a right of ownership over goods or personal chattels of another, to the alteration of the condition or the exclusion of the owner's rights.  *Crane v. Citicorp Nat'l Servs., Inc.*, 313 S.C. 70, 437 S.E.2d 50 (1993).  To recover in an action for conversion, the plaintiff must show: (1) an interest by the plaintiff in the thing converted; (2) the defendant converted the property to his or her own use; and (3) the use was without the plaintiff's permission.  *See id*.  Demand and refusal are unnecessary where the conversion resulted from the defendant securing the property illegally, tortuously, by fraud, or other wrongful conduct.  *Moore v. Weinberg*, 383 S.C. 583, 681 S.E.2d 875 (2009).  Although, where property for which the defendant was rightfully in possession is retained, demand and refusal are required.  *See, e.g., Roberts v. James*, 160 S.C. 291, 158 S.E. 689 (1931) (possession must be transformed into a

wrongful one by refusal to surrender, thus in all cases where the defendant was rightfully in possession, demand and refusal are necessary).

Further, conversion is the illegal use, misuse, or detention of another's chattel to the exclusion of the owner's rights. *Hite v. Thomas & Howard Co. of Florence*, 305 S.C. 358, 409 S.E.2d 340 (1991), *overruled on other grounds*, 319 S.C. 559, 462 S.E.2d 860 (1995). Money may be the subject of conversion where it is capable of being identified. *SSI Medical Servs., Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 7898 (1990) (there may be conversion even though specific coins and bills are not identified), *see also Richardson's Restaurants, Inc. v. Nat'l Bank of S.C.*, 304 S.C. 289, 403 S.E.2d 669, 672 (Ct. App. 1991) (there can be no conversion of money unless there is an obligation on defendant to deliver specific identifiable funds to plaintiff).

Here, Plaintiff has pled and will show that Plaintiff does, indeed, have an interest in the seized currency at issue [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶ 10]. Additionally, as shown it Exhibit B, Defendants have converted Plaintiff's seized currency to Defendants' own use, as $1,000.00 of the seized currency was distributed to SLED, $77,697,00 was split evenly between SLED, Charleston County Sheriff's Office, and Mt. Pleasant Police Department, $20,719.20 was allocated to the South Carolina Attorney General's Office, and $5,179.80 was deposited to the credit of the general fund of the State by the South Carolina State Treasurer [*See* Exhibit B at pp. 6-7]. Indeed, the disposition of the sum total of Plaintiff's seized currency was deposited and allocated without Plaintiff's permission, and without the opportunity for Plaintiff to assert Plaintiff's legal, innocent ownership/interest in same.

Certainly, Plaintiff made Defendants aware of Plaintiff's ownership interest in Plaintiff's seized currency; however, Defendants ignored Plaintiff's assertion and instead elected to institute forfeiture proceedings against Mr. Walker without providing Plaintiff due notice that Plaintiff's

seized currency was being summarily disposed of in the Berkeley County matter to which Plaintiff was not a party.  It goes against the notions of fair play and substantial justice for Defendants to reap the benefits of Plaintiff's lawfully begotten currency by ignoring Plaintiff's rights in same while never serving or notifying Plaintiff of the Berkeley County matter. Thus, Plaintiff has sufficiently pled a claim for conversion. Furthermore, Plaintiff has made a demand for the return of Plaintiff's seized currency, yet Defendants continue to convert and benefit from Plaintiff's property where Plaintiff has not been charged with or convicted of any crime related to the seized currency, and where Plaintiff has been unable to defend against the technical "conclusion" that Plaintiff's seized currency was found to be from illegal drug sales.  Therefore, it is Plaintiff's position that Plaintiff is not bound by any order entered in the Berkeley County matter purporting to forfeit and distribute Plaintiff's seized currency, that Defendants have converted Plaintiff's lawfully begotten property, and that Defendants' motion should be denied.

IV.    **42 U.S.C. Section 1983—Plaintiff was Never Arrested, Charged, nor Convicted of any Crime Whatsoever that Would Otherwise Purport to Forfeit Plaintiff's Right to Due Notice of the Berkeley County Matter.  As a result, Plaintiff's Constitutional Rights Were Summarily Denied to Plaintiff, and Defendants' Motion Should Most Assuredly be Denied.**

Plaintiff has alleged that John Does, 1-10, as agents or employees of Defendants, seized Plaintiff's currency and, thereafter, failed to institute forfeiture proceedings in a reasonable time against Plaintiff [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶¶ 14-17]. In doing so, Defendants have violated Plaintiff's constitutional rights to due process, the right to be free from excessive fines, and the right to be free from unlawful taking without just compensation [Pl.'s 2d Am. Compl., Dec. 11, 2019, ECF No. 10 at ¶ 20].

According to the United States Supreme Court, the protections of due process are "of a particular importance…where the Government has a direct pecuniary interest in the outcome of

the proceeding." *U.S. v. James Daniel Good Real Property*, 114 S. Ct. 492, 495 (1993). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (citations omitted), *see also Richards v. Jefferson Cnty.*, 517 U.S. 793 (1996) (*res judicata* may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected). This may include an obligation on the seizing agency, upon learning that an attempt at notice has failed, to take "reasonable follow-up measures" that may be available. *Jones v. Flowers*, 547 U.S. 220, 235 (2006) (state's certified letter, intended to notify a property owner that his property would be sold unless he satisfied a tax delinquency, was returned by the post office marked "unclaimed;" the state should have taken additional reasonable steps to notify the property owner, as it would have been practicable for the state to have done so).

"[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951). This right is a "basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of her possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment . . . ." *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972). Thus, the notice of a

hearing and the opportunity to be heard "must be granted at a meaningful time and in a meaningful

manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Notice and opportunity to be heard is elementary and a fundamental building block upon

which our nation's laws stand:

> It is clear however that if all property seized is intended to be subject
> to forfeiture, then the parties claiming an interest in the property
> must be afforded the basic due process notice and hearing rights.

36 Am. Jur. (2d) *Forfeitures and Penalties* § 36, at 634-635, 37 C.J.S. *Forfeitures* § 5(b), at pp.
11-12.

> Notice must be given to the owner of the property seized and those
> claiming an interest therein of the proceedings; there must be either
> personal notice to the owner, or at least a proceeding *in rem* with
> notice by publication; and a hearing must be had at which they can
> be heard, except in a few cases of necessity. A statute or ordinance
> which allows the seizure and confiscation of a person's property by
> ministerial officers without inquiry before a court or an opportunity
> of being heard in his own defense is a violation of the elementary
> principles of law and the constitution.

*Moore v. Timmerman*, 276 S.C. 104, 109, 276 S.E.2d 290, 293 (1981).

Furthermore, the South Carolina Supreme Court has held that the Excessive Fines Clause

is applicable to civil forfeiture cases. Under the three-part instrumentality test, a court must

examine: (1) the nexus between the offense and the property and the extent of the property's role

in the offense; (2) the role and culpability of the owner; and (3) the possibility of separating

offending property that can readily be separated from the remainder. *Medlock v. One 1985 Jeep

Cherokee*, 322 S.C. 127, 470 S.E.2d 373 (1996).

Here, forfeiture proceedings have not been instituted against Plaintiff. It should be

impossible for Defendants to reasonably deny same. Rather, Defendant Wilson instituted

forfeiture proceedings against Mr. Walker, not Plaintiff, in the Berkeley County matter. Patently

absent from the order from the Berkeley County matter (Exhibit B) is any reference to Plaintiff,

any reference that due notice was provided to Plaintiff, or any mention whatsoever that Plaintiff had asserted any right or interest in the seized currency at issue. Instead, Defendants rely on the result of a procedural technicality from Mr. Walker's apparent failure to respond to requests for admission[4] in the Berkeley County matter, which has absolutely no bearing on Plaintiff. That is, Plaintiff did not fail to respond to any requests for admission, as Plaintiff was not a party to the Berkeley County matter and was not afforded the due process right to stake Plaintiff's claim to the seized currency. Plaintiff denies that the seized currency was from any illegal drug sales or otherwise illicit acts, and has sufficiently pled that Plaintiff notified Defendants of Plaintiff's interest in the seized currency. Defendants hedge Defendants' argument in the present case on a procedural admission by Mr. Walker in the Berkeley County matter which is wholly independent and separate from Plaintiff and in utter disregard of Plaintiff's due process rights. Plaintiff was never arrested, charged, or convicted of any crime whatsoever that would otherwise purport to forfeit Plaintiff's right to having due notice of the Berkeley County matter. As a result, Plaintiff's constitutional rights were summarily denied to Plaintiff, and Defendants' motion should be denied.

**V.    The Seizure and Retention of Plaintiff's Lawfully Begotten Currency by Defendants is Unconstitutional; Thus, Defendants' Motion Should Be Denied.**

Plaintiff has sufficiently and properly pled that the State's forfeiture statutes at issue are unconstitutional. The well-reasoned opinion of Judge John (Exhibit A) provides an accurate and certainly persuasive argument on that score. Defendants contend that the State's forfeiture statutes do not violate the Takings Clause because forfeiture takes place under the State's police power

---

[4] Defendants argue that Mr. Walker's "failure to respond to Requests for Admissions about the origin of the money being from illegal drug sales qualified as an admission to the proceed seized was, in fact, the product of illegal acts" and that Mr. Walker "did not put forth any evidence demonstrating that the money was not, in fact, the produce of illicit activity and not assert it belonged to Plaintiff." [Defs.' Memo. in Supp. of Motion to Dismiss, Dec. 4, 2019, ECF No. 8 at p. 5].

allowing owners an opportunity to come forward after the seizure takes place to make a showing of why the property should not be forfeited. *Myers v. 1518 Holmes St.*, 306 S.C. 232, 411 S.E.2d 209 (1991). Defendants here clearly did not afford Plaintiff such an opportunity.

In *Austin v. U.S.*, the United States Supreme Court examined whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7). *Austin v. U.S.*, 113 S. Ct. 2801, 2803 (1993). Our nation's highest court determined that the Excessive Fines Clause did, in fact, apply to forfeitures. *Id*. Nearly 20 years earlier, it was also noted that, when forfeiture occurs of a truly innocent owner's property, substantial constitutional questions are raised. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 94 S. Ct. 2080 (1974) (holding that unconstitutional depravation is suffered by an innocent owner when it is demonstrated that there was a failure to provide an innocent owner of pre-seizure notice).

Civil *in rem* forfeitures are confiscations of property rights based on the improper use of the property, whether or not the owner has violated the law, while criminal forfeitures are to punish. *See Austin*, 113 S. Ct. at 2801. The pivotal aspect in *Austin* is that, once a court determines if forfeiture is punitive in nature, it then becomes subject to Eighth Amendment scrutiny. *Id*. In *Austin*, it is further noted that removing contraband is remedial because it removes dangerous items from society; however, forfeited currency must be determined as contraband as well. *Id*. Indeed, when assessing whether or not fines are excessive under the Eight Amendment, the United States Supreme Court concluded in 1998 that forfeiture of property must be examined and compared to the gravity of the defendant's offense. *U.S. v. Bajakajian*, 118 S. Ct. 2028 (1998) (currency was forfeited due to it not being claimed in customs; eventually the court found the currency at issue to be legal and that the fine of $357,144.00 was grossly disproportionate to the charge).

Likewise, in *Van Brocklin*, a forfeiture judgment was found to be "grossly disproportionate" when the Eight Circuit Court of Appeals identified the accused, whose money was forfeited, was not one of the masterminds to the crime. *U.S. v. Van Brocklin*, 115 F.3d 587, 602 (8th Cir. 1997). The analysis the *Van Brocklin* Court applied to identify the disproportionality of forfeiture was not limited to, but included the offense itself, personal benefit, defendant's motive, the extent of defendant's interest, and the enterprise itself. *Id.* at 601-602.

Here, Plaintiff has not been convicted (or for that matter, charged) of **any** offense and has had **absolutely no opportunity** in a properly noticed forfeiture proceeding to present or protect Plaintiff's Eighth Amendment rights. Like the aggrieved in *Bajakajian*, Plaintiff has effectively suffered a drastically and grossly disproportionate consequence (i.e., the seizure and retention of over $100,000.00 in U.S. Currency) where Plaintiff is not only an innocent owner of said currency, but also where Plaintiff has not even been charged with **any** offense whatsoever.

As emphasized previously, Mr. Walker—the only party in interest who was actually afforded notice and opportunity to be heard in the Berkeley County matter, was afforded this fundamental right; however, it bears repeating given Defendants' willful ignorance of same— Plaintiff was never "given the opportunity to come forward after the seizure took place." To that end, Defendants' motion cannot and should not succeed. As alleged by Plaintiff, Defendants seized Plaintiff's currency and blatantly failed to institute forfeiture proceedings against Plaintiff within a reasonable time despite having knowledge of Plaintiff's claim as a lawful and innocent owner of the seized currency. Defendants' actions violate Plaintiff's fundamental constitutional rights to due process, excessive fines, and the right to be free from unlawful takings without just compensation. It is, in Plaintiff's view, futile for Defendants to argue that the State's police power

overrides the Takings Clause when Plaintiff was never involved in any way in any proper forfeiture proceeding, generally, and in the Berkeley County matter, specifically.

It is elementary as to why Defendants' motion should fail.  The Constitution simply states, "nor excessive fines imposed" U.S.C.A. Const. Amend. VIII.  Plaintiff has never been convicted or charged of any crime relating to Plaintiff's property, yet Plaintiff has suffered the forfeiture of $104,596.00 of Plaintiff's lawfully begotten currency. Therefore, **any** taking of Plaintiff's property here would be excessive in itself.  Stated differently, the question presented is not whether or not the forfeiture is proper; rather, the question is whether or not Plaintiff has been afforded the constitutional right to protect Plaintiff's rights against an excessive "taking."  Surely, Plaintiff is effectively being punished by Defendants without Plaintiff having committed any underlying crime.  It is clear that Plaintiff was not afforded Plaintiff's constitutional rights.  Thus, Defendants' motion should absolutely be denied.

## CONCLUSION

Based upon the foregoing law and reasoning, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion.  Plaintiff's memorandum may be supported by any additional memoranda and arguments of Plaintiff's counsel as this Honorable Court may allow.

[signature block on following page]

Respectfully submitted,

**YELVERTON LAW FIRM, LLC**

*s/ Benjamin W. Lee*
Benjamin W. Lee
Federal ID No.: 12697
blee@ylitigators.com
Matthew E. Yelverton
Federal ID No.: 7966
myelverton@ylitigators.com
60 Folly Road
Charleston, SC 29407
(843) 574-8822
(843) 574-8824 (fax)

**ATTORNEYS FOR PLAINTIFF**

Charleston, South Carolina
February 6, 2020