ELECTRONICALLY FILED - 2019 Aug 28 2:14 PM - HORRY - COMMON PLEAS - CASE#2017CP2607411

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF HORRY<br><br>JIMMY RICHARDSON, II, SOLICITOR FOR THE FIFTEENTH JUDICIAL CIRCUIT, ON BEHALF OF THE 15TH CIRCUIT DRUG ENFORCEMENT UNIT,<br><br>   Petitioner,<br><br>vs.<br><br>TWENTY THOUSAND SEVEN HUNDRED SEVENTY-ONE AND 00/100 DOLLARS, ($20,771.00) U.S. CURRENCY,<br><br>   Respondent Property,<br><br>TRAVIS LEE GREEN,<br><br>   Respondent. | IN THE COURT OF COMMON PLEAS<br>FIFTEENTH JUDICIAL CIRCUIT<br><br>CASE NO: 2017-CP-26-07411<br><br><br>**ORDER** |

  This matter comes before the Court pursuant to the above-captioned forfeiture action in which the State requests that the Court approve the forfeiture of monies seized by agents pursuant to S.C. Code Section 44-53-520.

  This case was assigned to the Honorable Judge Steven H. John by the Chief Administrative Judge of the Fifteenth Circuit Court of Common Pleas on May 14, 2019. At the Court's request, the parties submitted and filed briefs as to the constitutionality of South Carolina's forfeiture statutes as well as a Consent Brief in which the parties

stipulated to the underlying facts of this case, as well as the statutorily prescribed method of distribution of forfeited funds by the Fifteenth Circuit Solicitor's Office and the relevant law enforcement agencies.

This Court finds that South Carolina's forfeiture statutes, S.C. Code Sections 44-53-520 and 44-53-530, violate the prohibition on excessive fines found in the Eighth Amendment to the United States Constitution and Article I, Section 15 of the South Carolina Constitution.

Furthermore, this Court finds that S.C. Code Sections 44-53-520 and 44-53-530 violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that the forfeiture statutes (1) place the burden on the property owner to prove their innocence, (2) unconstitutionally institutionally incentivize forfeiture officials to prosecute forfeiture actions, and (3) do not mandate judicial review or judicial authorization prior to or subsequent to the seizure.

## STATEMENT OF FACTS

The Complaint in this action alleges that agents with the 15th Circuit Drug Enforcement Unit made three controlled buys of cocaine from Defendant Green. The agents arrested Defendant Green and charged him with two counts of distribution of cocaine and one count of trafficking cocaine.

Agents then executed a search warrant on Defendant Green's residence located at 185 Avondale Drive in Myrtle Beach, S.C., discovering a backpack containing approximately 132 grams of an off-white rock-like substance, 32 grams of a white powdery substance, 319 grams of a green leafy substance, and 27 morphine tablets.

Agents also seized $19,800.00 located in a closet and $971.00 that was on Defendant Green's person at the time of his arrest. On November 10, 2017, Plaintiff filed the Complaint in this matter requesting that the Court approve the forfeiture of the monies seized by the agents pursuant to S.C. Code Section 44-53-520.

The parties have stipulated that, pursuant to S.C. Code Section 44-53-530(e), (f), and (g), the law enforcement agencies involved in a forfeiture proceeding receive

ELECTRONICALLY FILED - 2019 Aug 28 2:14 PM - HORRY - COMMON PLEAS - CASE#2017CP2607411

seventy-five percent of all funds in excess of $1000.00, the prosecuting agency receives twenty percent of all funds in excess of $1000.00, and five percent of all funds in excess of $1000.00 are remitted to the State Treasurer and deposited to the credit of the general fund of the State. S.C. Code Section 44-53-530(e).

The first $1000.00 of any cash that is seized is retained by the law enforcement agency which effected the seizure unless otherwise agreed to by the law enforcement agency and prosecuting agency. S.C. Code Section 44-53-530(f).

All forfeited funds are maintained in a separate account by each agency and can be drawn upon and used only by that agency. "For law enforcement agencies, the accounts must be used for drug enforcement activities, or for drug or other law enforcement training or education. For prosecution agencies, the accounts must be used in matters relating to the prosecution of drug offenses and litigation of drug-related matters." S.C. Code Section 44-53-530(g).

Although the "accounts must not be used to supplant operating funds in the current or future budgets," the funds are permitted to be used by each agency for recurring purchases if approved by the governing body for the law enforcement agency before the purchases are made. *Id.*

## LAW AND ANALYSIS

This Court finds that S.C. Code Sections 44-53-520 and 44-53-530 are unconstitutional because (1) they violate the prohibition on excessive fines found in the Eighth Amendment to the United States Constitution and Article I, Section 15 of the South Carolina Constitution; (2) they violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that they place the burden on the property owner to prove his or her innocence; (3) they violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that they institutionally incentivize forfeiture officials to prosecute forfeiture actions; and (4) they violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that a seizure under S.C. Code Sections 44-53-530(b)(1) and (4), the law does not provide for any judicial review or judicial authorization prior to or subsequent to the seizure.

### *S.C. Code Sections 44-53-520 and 44-53-530 Violate the Excessive Fines Clause of the United States Constitution and South Carolina Constitution*

The Eighth Amendment to the United States Constitution prohibits the government from imposing unduly harsh penalties: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The Eighth Amendment's Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Timbs v. Indiana*, 139 S.Ct. 682, 687 (2019), citing *United States v. Bajakajian*, 524 U. S. 321, 327–328 (1998) (quoting *Austin v. United States*, 509 U. S. 602, 609–610 (1993)). The Excessive Fines Clause applies to the states under the Fourteenth Amendment's Due Process Clause. *Timbs*, 139 S.Ct. at 682. Furthermore, the Excessive Fines Clause applies to civil *in rem* forfeitures when they are at least partially punitive. *Austin v. United States*, 509 U.S. 602 (1993).

The South Carolina Constitution also contains a provision prohibiting excessive fines:

> § 15. Right of bail; excessive bail; cruel or unusual or corporal punishment; detention of witnesses. All persons shall be, before conviction, bailable by sufficient sureties, but bail may be denied to persons charged with capital offenses or offenses punishable by life imprisonment, or with violent offenses defined by the General Assembly, giving due weight to the evidence and to the nature and circumstances of the event. Excessive bail shall not be required, *nor shall excessive fines be imposed*, nor shall cruel, nor corporal, nor unusual punishment be inflicted, nor shall witnesses be unreasonably detained. (1970 (56) 2684; 1971 (57) 315; 1998 Act No. 259.).

South Carolina Constitution, Article I, Section 15 (emphasis added).

This Court finds that South Carolina's forfeiture statutes violate both the federal and South Carolina constitutional protections against excessive fines by permitting the government to seize unlimited amounts of cash and other property without regard to the proportionality of the crime that may have been committed. Indeed, they allow the government to seize unlimited amounts of cash and other property *when no crime has been*

<mark>
<mark>
<mark>
<mark>
<mark>
<mark>

*committed*, without a criminal conviction and without proof of a crime having been committed beyond a determination of probable cause.

For example, South Carolina's forfeiture statutes would allow law enforcement to seize millions of dollars in assets from an individual when the maximum fine authorized by law is minimal or when no crime has been committed at all. This unfettered authorization to seize unlimited amounts of property from citizens without regard to the proportionality of the offense committed – indeed, without evidence proving that the individual committed an offense – compels this Court to find that the statutory scheme is unconstitutional and must be invalidated under the federal and state constitutional prohibitions on excessive fines and pursuant to the United States Supreme Court's decision in *Timbs*.

***S.C. Code Sections 44-53-520 and 44-53-530 Violate Due Process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section Three of the South Carolina Constitution because They Place the Burden of Proof on Defendants***

This Court finds that the requirement under South Carolina's forfeiture statutes that property owners prove their innocence, placing the burden of proof on the property owner, violates the Due Process Clauses of the federal and South Carolina Constitutions. *See Harjo v. City of Albuquerque*, 326 F.Supp.3d 1145 (D. N.M., 2018) (finding that New Mexico forfeiture program violates due process by placing the burden of proof on innocent property owners).

Although, in some cases, the affirmative defense rules pronounced by the United States Supreme Court permit the burden of proof to be placed on the defendant in a criminal case, *see Smith v. U.S.*, 568 U.S. 106 (2013), these rules only apply if the government first proves some wrongful act by the defendant. Because S.C.'s forfeiture statutes do not require meaningful proof of any wrongful act by the defendant, they unconstitutionally shift the burden of proof to defendants who, in some cases, are not even charged with a crime. *See Martin v. Ohio*, 480 U.S. 228, 233-34 (1987), *Nelson v. Colorado*, 137 S.Ct. 1249 (2017) (invalidating a Colorado statute that required a defendant to "prove her innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to an invalid conviction").

The *Nelson* Court applies the balancing test announced in *Mathews*, evaluating (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the governmental interest at stake. *See Mathews v. Eldridge*, 424 U. S. 319, 335 (1976). As in Nelson, Defendant Green has an obvious interest in regaining the money that was taken from him by the State of South Carolina. Like the statute in question in *Nelson*, the South Carolina forfeiture scheme "creates an unacceptable risk of the erroneous deprivation of defendants' property," in that it does not require any meaningful proof of a defendant's guilt before the seizure of a defendant's property. Furthermore, the state of South Carolina has zero legitimate interest in seizing or withholding money or other property when the defendant has not been convicted of a crime, and the government has not proven that the property was connected to a crime.

This Court finds that South Carolina's forfeiture procedures violate the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section Three of the South Carolina Constitution by failing to provide meaningful protections for the due process rights of defendants in that they place the burden of proof on property owners and allow the state to seize and withhold money or other property when a defendant has not been convicted of a crime, when a defendant has not even been charged with a crime, or when the government has not provided any meaningful evidence that the property is connected with a crime.

***S.C. Code Sections 44-53-520 and 44-53-530 Violate Due Process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section Three of the South Carolina Constitution because They Institutionally Incentivize Forfeiture Officials***

This Court finds that S.C. Code Sections 44-53-520 and 44-53-530 are unconstitutional because they violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that they institutionally incentivize forfeiture officials to prosecute forfeiture actions.

Because forfeiture programs in South Carolina are self-funding, they violate due process in that they create an institutional incentive for forfeiture program officials to

vigorously pursue forfeitures even where there is no basis for a forfeiture and when leniency would be more appropriate. *See Tumey v. Ohio*, 273 U.S. 510 (1927).

Enforcement personnel are responsible for conducting investigations following a seizure, including verifying whether the seizure was justified and determining whether to return a defendant's property, demand the full amount of forfeiture money or property, or negotiate a settlement in which a defendant who has not been proven guilty must relinquish some of their property, ensuring the continued flow of forfeiture funds.

Furthermore, the very existence of the forfeiture programs depends on the maintenance of income generated by the programs. The budgets for forfeiture programs and the expenditures of individual agencies who benefit financially are necessarily tied to the amount of revenue generated by the programs. Consequently, forfeiture officials, including law enforcement officers, assistant solicitors, and outside counsel retained to prosecute forfeiture actions, are affected by the desire to generate as much money as possible though the forfeiture programs.

Forfeiture programs in South Carolina have an unconstitutional incentive to prosecute forfeiture cases because, in practice, these programs set their own budget and can spend forfeiture funds in any amount and on any items that they choose, including recurring expenses, and without any meaningful oversight. "Thus, there is a 'realistic possibility' that forfeiture officials' judgment 'will be distorted by the prospect of institutional gain' -- the more revenues they raise, the more revenues they can spend." *Harjo v. City of Albuquerque*, 326 F.Supp.3d at 1151, citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 251 (1980).

Because the revenues generated by the forfeiture programs are used to pay the expenses of the forfeiture programs, to justify the salaries of forfeiture employees, and to maintain a level of discretionary spending that would not otherwise be available to the agencies involved, enforcement personnel have an institutional financial incentive to vigorously pursue forfeitures regardless of the merits of the action.

In *Tumey*, the United States Supreme Court invalidated a statutory scheme that financially benefited a judge who was paid only for guilty verdicts but not acquittals. "The Supreme Court has recognized several factors that bear on whether a law, procedure, or program unconstitutionally biases an official: (i) whether the amount of penalties or prosecutions affects an official's salary; (ii) the official's authority over

allocating the penalty funds; (iii) the percentage of the budget that the fees and penalties constitute; and (iv) whether surplus funds are allocated to the program or to other programs." *Harjo v. City of Albuquerque*, 326 F.Supp.3d at 1184, *see Marshall v. Jerrico*, 446 U.S. at 245-46, *see also Ward v. Village of Monroeville*, 409 U.S. 57, 58 (1972) (concluding that a mayor's impartiality was sufficiently compromised to violate due process when a substantial portion of the "village income is derived from the fines, forfeitures, costs, and fees imposed by him in his mayor's court").

The test for impartiality is less strict when the official performing the duty "act[s] in a prosecutorial or plaintiff-like capacity." *Harjo*, 326 F.Supp.3d at 1185, citing *Marshall*, 446 U.S. at 248.

> Our legal system has traditionally accorded wide discretion to criminal prosecutors in the enforcement process, and similar considerations have been found applicable to administrative prosecutors as well.... [i]n an adversary system, they are necessarily permitted to be zealous in their enforcement of the law. The constitutional interests in accurate finding of facts and application of law, and in preserving a fair and open process for decision, are not to the same degree implicated if it is the prosecutor, and not the judge, who is offered an incentive for securing civil penalties.

*Harjo*, 326 F.Supp.3d at 1185, *citing Marshall*, 446 U.S. at 248-49 (internal citations omitted).

"Although providing a lower standard, the due process clause still imposes 'limits on the partisanship of administrative prosecutors.'" *Harjo*, 326 F.Supp.3d at 1185, citing *Marshall*, 446 U.S. at 249. "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Id.*, citing *Marshall*, 446 U.S. at 249-50. "Such personal interest can take the form of economic profit or 'the prospect of institutional gain as a result of zealous enforcement efforts.'" *Id.*, citing *Marshall*, 446 U.S. at 250.

In *Marshall*, the Court found that the Department of Labor's Employment Standard Administration ("ESA") did not violate due process where assistant regional administrators prosecute and collect civil penalties from companies that violate child labor laws. *Marshall*, 446 U.S. 238. The Court found that there was no unconstitutional institutional incentive because the civil penalties collected amounted to less than one

percent of the ESA's budget, the amount of ESA's budget that was returned to the treasury was substantially greater than the amount of civil penalties that were collected, and the allocation of civil penalties was controlled by a national officer and not a regional administrator, so that there was no assurance that the penalties collected would be returned to the regional administrator's office. *Marshall*, 446 at 250-251.

In *Marshall*, expenditures of civil penalties were controlled by a national officer with no local control over the funds. In South Carolina, forfeiture income and expenditures are controlled by each agency, the funds remain in the agency, and spending decisions are made solely by the agency. Furthermore, law enforcement agencies are specifically authorized to use forfeiture funds for recurring expenses in the discretion of the agency's governing body.

Whereas, in *Marshall*, civil penalties collected were returned to the treasury, under South Carolina's forfeiture program only five percent of total forfeiture income is required to be remitted to the State treasurer and deposited to the credit of the general fund of the state. S.C. Code Section 44-53-530(e)(3). Surplus forfeiture funds are not remitted to the general fund, and, instead, are spent by the agencies who receive the funds as their share of the statute's profit-sharing scheme.

A full 75% of all forfeiture income is retained by the law enforcement agency that seized the property, while 20% of forfeiture income is retained by the state's solicitor's offices. S.C. Code Section 44-53-530(e). 44-53-530(g) requires that all forfeiture income:

> …be retained by the governing body of the local law enforcement agency or prosecution agency and deposited in a separate, special account in the name of each appropriate agency. These accounts may be drawn on and used only by the law enforcement agency or prosecution agency for which the account was established. For law enforcement agencies, the accounts must be used for drug enforcement activities, or for drug or other law enforcement training or education. For prosecution agencies, the accounts must be used in matters relating to the prosecution of drug offenses and litigation of drug-related matters.

S.C. Code Section 44-53-530(g).

The requirement that expenditures be related to "drug enforcement activities" in the case of law enforcement agencies or to "the prosecution of drug offenses" in the case of solicitor's offices, has no meaningful oversight, results in discretionary spending on items that most likely would not have been approved by the legislature, includes recurring expenses from year to year, and ensures that the forfeiture programs in each agency are self-funding.

The amount and nature of discretionary spending, determined by officials in each agency, is necessarily based on the amount of forfeiture revenue accomplished by that agency in any given year.

Forfeiture officials in each agency are thus permitted to approve spending over and above appropriations approved by the legislature, and they can spend as much forfeiture income as they bring in each year. With these facts, "there is a realistic possibility that the forfeiture program prosecutors' judgment will be distorted, because in effect, the more revenues the prosecutor raises, the more money the forfeiture program can spend." *Harjo*, 326 F.Supp.3d at 1195, *citing Ward v. Village of Monroeville*, 409 U.S. at 60 ("Plainly that possible temptation may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court.").

Similarly, in *Flora*, the District Court for the Southern District of Iowa found that "a special Iowa police task force charged with, among other things, drug investigation, enforcement, and civil asset forfeiture," had an unconstitutional profit incentive where "the task force distributed ten percent of any successful civil forfeiture to the county attorney's office, twenty percent to the state, and the remaining funds back to the task force." *Harjo*, 326 F.Supp.3d at 1196, *citing Flora v. Sw. Iowa Narcotics Enforcement Task Force*, 292 F.Supp.3d 875, 884-85, 904 (S.D. Iowa, 2018). The District Court denied the task force's summary judgment motion on profit incentive because: "(i) the profit-sharing agreement did not 'limit forfeiture shares to expenses accrued by the Task Force and the [county attorney's office] in pursuing the forfeitures'; and (ii) whether the task force received excessive funds from its seizures 'rest[ed] on the sole determination of the Task Force Unit Supervisor.'" *Harjo*, 326 F.Supp.3d at 1196, citing *Flora*, 292 F.Supp.3d at 904.

Facts that demonstrate an unconstitutional incentive to prosecute forfeiture cases under South Carolina's forfeiture scheme include:

- Forfeiture revenues in each agency are directed to a designated special revenue fund;
- These funds are used to pay expenses directly associated with the program;
- These funds are used to pay for discretionary items that would otherwise be unavailable to law enforcement agencies;
- The funds are used to pay for recurring expenses, creating a secondary budget within each agency that is not subject to legislative approval and that results in agency dependence on forfeiture funds to continue paying those expenses;
- The existence of forfeiture programs in each agency depends on the revenue generated by forfeitures;
- Forfeiture revenue is used to justify the salaries of forfeiture officials;
- Declines in forfeiture revenue may require the elimination of positions of forfeiture officials;
- Declines in forfeiture revenue would require the elimination of significant discretionary spending by each agency involved; and
- In practice, officials involved in the forfeiture programs control how forfeiture income is budgeted and spent with little or no oversight from the legislature.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Harjo v. City of Albuquerque*, 326 F.Supp.3d at 1184, *quoting Marshall*, 446 U.S. at 242. "This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process." *Id.* Due process does "not permit any procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused." *Id.*

This Court finds that South Carolina's forfeiture procedures violate the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that they institutionally incentivize forfeiture officials.

The forfeiture program, forfeiture officials, and law enforcement agencies in South Carolina are dependent on the revenue generated by the forfeiture program. South Carolina forfeiture programs have de facto power over their own spending – the more revenue they raise, the more they can spend.

### *S.C. Code Sections 44-53-520 and 44-53-530 Violate Due Process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section Three of the South Carolina Constitution because They Do Not Provide for Judicial Review or Judicial Authorization Prior to or Subsequent to the Seizure*

Under S.C. Code § 44-53-530(a), the seizing agency is required to file a forfeiture action *within a reasonable time of the seizure*. The statute does not define a reasonable time. The law permits a seizure without a warrant if the seizure is made as incident to arrest or if probable cause exists to believe that the property was used in violation of the drug laws. *See*, S.C. Code § 44-53-520(b)(1) and (4). The statute does not have a provision for any type of pre-seizure or post-seizure hearing to determine if probable cause exists. For a seizure under subsections (b)(1) and (4), the law does not provide for any judicial review or judicial authorization prior to or subsequent to the seizure.

In practice, many seizures under South Carolina's forfeiture laws are *not* followed up by the filing of a forfeiture action, leaving many defendants with the choice of retaining an attorney to file a civil action against the state or simply allowing law enforcement to keep their money or property.

Because the statutes do not require a pre-seizure or post-seizure hearing, S.C. Code § 44-53-520 and S.C. Code §44-53-530 do not comply with the due process clause of Article I, Section 3 of the South Carolina Constitution or the Fifth and Fourteenth Amendments of the United States Constitution.

The United States Supreme Court has said, "Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *U.S. v. Good*, 510 U.S. 43, 48 (1993). While the United States Supreme Court has recognized that under limited exigent circumstances, a pre-seizure hearing may not be required, the Court has never held that a state may dispense with such hearing. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974).

In *State v. Matheason*, the Washington Supreme Court declared its state forfeiture laws unconstitutional because it failed to provide for any type of meaningful hearing after the seizure of the property. *State v. Matheason*, 524 P.2d 388 (1974). The Washington Court stated, "Inasmuch as subsection (b)(4) does not provide for notice and hearing even after seizure it is violative of due process even under the holding in *Calero*." *Id.* at 390. Like South Carolina's statute, the Washington statute required that a forfeiture action be filed "promptly" but did not otherwise provide for any type of post-seizure hearing. In *Matheason*, the forfeiture action was filed in response to the action by the owner to regain possession of his automobile. *See also, State v. One 1972 Mercury Capri*, 537 P.2d 763 (1975).

In *Department of Law Enforcement v. Real Property*, the Florida Supreme Court held that a forfeiture statute that does not provide for a post-seizure hearing is unconstitutional as a denial of procedural due process. *Department of Law Enforcement v. Real Property*, 588 So.2d 957 (1991). The Court held that, "Regarding matters of personal property, due process permits the state to seize personal property prior to notice or an opportunity for a hearing provided that notice is sent and the opportunity for an adversarial preliminary hearing is made as soon as possible after the seizure." *Id.* at 965.

California reached a similar result when it held that, "The rule is well settled that to constitute due process of law in regard to the taking of the property the statute should give the parties interested adequate remedy for the vindication of their rights…" *People v. Broad*, 12 P.2d 941, 943 (1932).

In declaring a portion of its forfeiture law unconstitutional, the Oregon Court of Appeals said, "[N]o reason appears why the city would be overly burdened or any public interest disserved by providing an immediate post-seizure probable cause hearing… We conclude that the due process balance manifestly tilts in favor of a prompt post-seizure hearing." *State ex rel. Schrunk v. Metz*, 867 P.2d 503, 511 (1993).

Similarly, the New York Court of Appeals has said, "We therefore conclude, after balancing these considerations, that due process requires that a prompt post-seizure retention hearing before a neutral magistrate be afforded, with adequate notice, to all defendants whose cars are seized and held for possible forfeiture. At such a hearing, the County must establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention

ELECTRONICALLY FILED - 2019 Aug 28 2:14 PM - HORRY - COMMON PLEAS - CASE#2017CP2607411

is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding." *County of Nassau v. Canavan*, 802 N.E.2d 616, 625 (2003).

The South Carolina statute does permit a property owner to file a civil action to obtain the return of their property, but this ignores the fact that the government is seizing and keeping a citizen's property without any judicial determination of the right of the government to keep his or her property. Due process cannot mean that the state has the right to decide *when* they wish to afford a person a hearing to determine whether the government has the right to seize their property. No citizen in a free nation should have their property seized without a hearing and be at the mercy of the agency seizing the property to determine when they will have a hearing. Due process demands more than this.

This Court finds that South Carolina's forfeiture procedures violate the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution because they do not provide for judicial review or judicial authorization prior to or subsequent to the seizure.

## Conclusion

This Court finds that South Carolina's forfeiture statutes, S.C. Code Sections 44-53-520 and 44-53-530, violate the prohibition on excessive fines found in the Eighth Amendment to the United States Constitution and Article I, Section 15 of the South Carolina Constitution.

Furthermore, this Court finds that S.C. Code Sections 44-53-520 and 44-53-530 violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section Three of the South Carolina Constitution in that the forfeiture statutes (1) place the burden on the property owner to prove their innocence, (2) unconstitutionally institutionally incentivize forfeiture officials to prosecute forfeiture actions, and (3) do not mandate judicial review or judicial authorization prior to or subsequent to the seizure.

AND IT IS SO ORDERED.

THE HONORABLE STEVEN H. JOHN
*Chief Administrative Judge*
*Court of General Sessions*
*Fifteenth Judicial Circuit*

August 28, 2019
Conway, South Carolina